SAFFORD V. STATE
ADDENDUM to
Section II

As documented by the March 17 letter from Mr. Deeley and the May 19 letter from Counsel (attached) Counsel was asked to present a defense based upon an alibi that I was home, and had answered a telephone call from the suspect, Mr. Jordan, at the very time the crime occured, many miles from my home in Newark. Counsel refused to subpoenae the necessary land-line phone records, or to approach Mr. Jordan as documented by the letter, attached. This issue has recently been decided upon by the Delaware Supreme Court in Brown V. State 729 A.2d 259 (1999) "'It is for the trial court to decide whether the question, after actually being put, is such that any direct answer thereto could reasonably be self incriminatory.' Steigler v. Insurance Co. of N. America citing Mumford v. Croft, Del Supr 93 A.2d 506 (1952), Because A witness cannot avoid interrogation by claiming that 'His answers may tend to incriminate him', Steigler - Del Supr., 306 A.2d 742, 743 (1973)"

Counsel refuses to reason, obstinantly arguing that my problem, "like so many others caught up in the criminal justice system, is that just a little bit of knowledge turns out to be a dangerous thing," Since "I am so busy trying to convince others I couldn't possibly be guilty," it would appear that counsel is arguing the wrong case, and that I must fight these unfair proceedings from every angle. See May 19 letter, Page 4, Paragraph 3, and Page 5, Paragraph two.



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### SYKES BUILDING
### 45 THE GREEN
### DOVER, DELAWARE 19901

**LAWRENCE M. SULLIVAN**
**PUBLIC DEFENDER**

**ANGELO FALASCA**
**CHIEF DEPUTY**

**SHERYL RUSH-MILSTEAD**
**ASSISTANT PUBLIC DEFENDER**

**TELEPHONE**
**(302) 739-4476**

May 19, 2005

David Safford
SCI
Georgetown, DE  19947

Dear Mr. Safford:

In response to your letters to my office, I offer the following:

1. In your letter dated 04.12.05, you reference several documents which you wish me to correct. Since I did not create the documents I cannot correct them. As to your statement that I comment only on the negative, perhaps that may be best understood if read in the context of my replies to you being based on the evidence before us. Your statement that my account of the events is incorrect again misreads the data. I do not have an account of the events, as I was neither a participant nor a witness. The accounts of the events that I have are those supplied by the complaining witness and his estranged spouse/girlfriend, by the one co-defendant who made a statement, and by you. The police reports are not public records and are not available pre-trial, absent the waiving of the Preliminary Hearing. You can opine what you believe to be the law and the rules of procedure as many times as you like; however, that will not make it so.

2. In your letter dated 05.10.05 you reference your co-defendant, Mr. Jordan. If his matter is not resolved by a plea, then he will be present for trial, as a defendant. Unless he takes the stand, he cannot be questioned. Just as if you do not take the stand, neither his counsel nor the State can question you. Neither can I communicate with him, as he is charged and awaiting trial, and is represented by counsel. The rest of your letter was rambling nonsense, as usual.

David Safford
May 19, 2005
Page 2.

At this point in time, I think it best if I review for you the evidence the State has, and how and when it obtained said evidence.

Police Reports:

1. <u>Initial Crime Report of 10.15.04 by Sgt. Maloney</u> of Harrington PD. It is a eight-page report with basic data of who / what / when / where on page 1; the types of crimes believed to have been committed along with the items taken on pages 2-5. On pages 6-8 is the narrative report, which can be summarized as follows:

On October 15, 2004, Sgt. Malloy of the Harrington Police Department was called to 208 West Street, in Harrington, in response to a Home Invasion. The two individuals who were in the home at the time of the event were transported separately to the police station and questioned separately. In essence, they told the officer the following:

Two black males entered the residence by breaking the kitchen window and entering the house. The two black males went upstairs, and located the two residents in the hallway. The female, who had a small child in her arms, was able to go into a bedroom and lock the door. The two suspects had the male handcuff his wrists. They also ordered him to handcuff his ankles but the cuffs would not fit. The shorter of the two suspects gave these orders. He also demanded that the male resident hand over his money, drugs, and jewelry. When he said he did not have any money, he was assaulted. He said the two suspects hit him about the head and face with their pistols. Then both suspects ransacked his bedroom, removing coins from the chest of drawers and a large amount of cash from the male's pants pockets. The suspects then fled out of the house, towards the rear of the property. The male resident said the vehicle left in the direction of Milby Street. When he tried to use the phone to call the police, the line was dead. He then went to the neighbors, but no one was home (or couldn't be awakened). He returned to his house and found the phone to be working and called the police.

The female said she left one child in one room and went into another room where there were other children while the male was being assaulted. She said that she yelled at the suspects to stop.

Neither resident could identify the suspects.


2. <u>Supplemental Report dated 10.16.04 by Ptlm. Gillespie</u>: who did an initial interview with the male resident who was at the front door of the residence. Said he was upstairs, heard glass breaking downstairs. He left the bedroom and heard the suspects downstairs. He fell and saw two males coming up the stairs, armed w/handguns. They demanded money and one of the suspects hit him in the head with a handgun. He was

David Safford
May 19, 2005
Page 3.

forced to handcuff himself and he gave them $600-700 in cash, after which they began to remove handfuls of change off his nightstand. One demanded his necklace, which he couldn't remove since he was handcuffed. They forced him to rip it off, after which they fled.

3. <u>Supplemental Report by Lt. Barlow dated 10.26.04</u>: He did an initial interview w/female resident, who stated: She heard the male resident screaming that someone is in the house. She saw one of the suspects but his face was covered. She locked herself in a bedroom with the children. She could her the suspects yelling about the money and threatening to shoot the male. She said that she and the male had been separated for about a week but he had asked her to come back home.

4. <u>Supplemental Report by Sgt. Maloney dated of 10.17.04</u>: This was written after the stop, the investigatory detention, and the arrest, which included statements by two of the co-defendants, yourself and Mr. Jordan. This report adds the Suspect/Defendant information and all of the charges to be filed. It is a basic data report.

5. <u>Supplemental Report by Cpl. Kendall dated 10.28.04</u>: This officer was called in to assist Neeman with the arrest. Mirandized defendants. Assisted Neeman in background data search. PINER AGREED TO MAKE STATEMENT. JORDAN DECLINED TO MAKE STATEMENT. SAFFORD AGREED TO MAKE STATEMENT.

6. <u>Supplemental Report by Ptlm. Neeman dated 10.28.04</u>: Was dispatched BACK TO 208 WEST STREET ON 10.16.04: THE FEMALE SAID THAT THE SUSPECTS WHO ROBBED THE PLACE THE NIGHT BEFORE WERE EN ROUTE TO THE RESIDENCE AGAIN TO GET THE REST OF THE MONEY. SHE SAID THE SUSPECTS WERE ARMED.

That, Mr. Safford, gave the police the articulable suspicion to stop the vehicle. Everyone ordered out and two suspects were armed. All three taken to police station where suspects can be kept for an INVESTIGATORY DETENTION. During that time frame is when the officer prepared the Affidavit of Probable Cause which would allow him to request a warrant for your ARREST. You see, Ms. Smallwood told the cops when you guys would be arriving and in what color and type of car. The stop was a good one and cannot be challenged. After the three of you were removed from the vehicle the male resident identified the two black suspects. Any weaknesses of that identification is handled at trial. IT IS NOT A PRE-TRIAL MATTER. Since you were in the car with the two suspects who had robbed the couple, of course, you were going to be subject to the

David Safford
May 19, 2005
Page 4.

DETENTIONARY PERIOD.  On the facts as they exist,  THIS CANNOT BE CHALLENGED SUCCESSFULLY.

Read the Affidavit of Probable Cause again.  Number 7 in particular.  AFTER THE ACCUSED WERE TAKEN INTO CUSTODY.  NOT YET ARRESTED BUT CERTAINLY NOT FREE TO GO HOME.  THAT'S WHY YOU WERE MIRANDIZED.  ONCE THEY HAD YOUR STATEMENT AND THAT OF MR. PINER, THE OFFICERS HAD MORE THAN ENOUGH PROOF TO GET THE ARREST WARRANT  - WHICH IS WHAT THE AFFIDAVIT OF PROBABLE CAUSE ENABLED THEM TO DO.

Mr. Safford, your problem, like so many others caught up in the criminal justice system, is that just a little bit of knowledge turns out to be a dangerous thing, because you don't know the law, and you are so busy trying to convince others that you couldn't possibly be guilty of what you  have been charged with that you trip all over yourself, make outlandish statements and insist on motions being filed and things being done that would get you laughed out of court.  Which is why you wait so long for any response.  Because I have to wade through all of the crap to see if there really is any question or issue or information of any value.  And sadly to say, Mr. Safford, your letters are sadly lacking in anything except temper tantrums and horribly mangled, non-sensical, illogical and even comical bits of words and phrases which you string together in an abject attempt to present God only knows what at this point.

Now, interestingly enough, Ms., Smallwood was arrested and charged similarly as the three of you.  Logically, as a conspirator, the allegations in the Affidavit of Probable Cause which served as the basis for her arrest warrant parallel those on the one used to obtain your arrest warrant, as would be expected.

PINER told the officer AS HE WILL TESTIFY IN COURT that he and Jordan and you were in on the home invasion and that you drove them to do it, parking out in back.  Piner said that it was Jordan who broke the rear window on the first floor which they entered.  They assaulted and robbed Mr. Wallker.  He said that Smallwood was in on the
plan and in fact, that she had planned it.

PINER and JORDON both told the officer AND WILL TESTIFY IN COURT that she offered $38,000 to do the robbery.

AND, in Item #10, on the Affidavit of Probable Cause for Ms. Smallwood, we have:  "Information obtained from Jordan and Piner revealed that Smallwood in fact planned the Home Invasion at 208 West Street in Harrington.  Just days prior to the Home Invasion, Jordon, Piner, Smallwood and SAFFORD drove to Harrington in Safford's car to see where Smallwood lived and to plan the robbery."

David Safford
May 19, 2005
Page 5.


So, Mr. Safford, that is the information the State has which it plans to use against any defendant who elects to exercise his right to go to trial. Which you may do. I don't know if Jordan has pled out; but I believe both Smallwood and Piner have, which means they will testify at your trial consistent with these statements. In plain English, that means they will testify that you were in on the robbery from the beginning, and they will describe your participation in detail. Why? They have accepted pleas and accordingly will serve less jail time than someone convicted on all of the charges. Simple logic.

You may continue to communicate with me, but only if you stop the nonsense and direct your questions, concerns, comments, etc. to the relevant facts of the case. If any communication is filled with your inane demands that I do this or do that, which I can assure you I have no intention of doing, I will not read any further, and I will simply return it to you. You are an adult; it's about time you started behaving like one and taking responsibility for your actions. You have wasted all of this precious time of yours ranting and raving, all for naught. Well, consider yourself as being on notice. I will be more than happy to work with you, but on my terms. You will behave as an adult, you will address the issues in a mature manner, and you will leave the law to me.


Sincerely,

Sheryl Rush-Milstead


SR-M/wp

Sussex Correctional Institute
Rt 113 Box 500
Georgetown, DE 19947

Judges Chambers
#38 The Green
Dover, DE 19901

September 1, 2005

Re: State v. Safford, #0410014004

To the Honorable Judge Young:

Dear Sir:

1.) Your August 31st decision to deny a dismissal in my case incorrectly comments upon my discretion in requesting the motion because Superior Court Rules clearly dictate that unless a criminal defendant asserts the right to a speedy trial, he implicitly waives that right, as discussed under Criminal Rule 48(b). I am correctly preserving my right to have a speedy trial which is invited by this rule.

2.) The decision incorrectly identifies the initial delay as being a result of a motion that was entered by the defendant, when trial was actually delayed by a motion of the defense counsel, prior to that motion by the defendant. Counsel was acting on behalf of the defendant under protest and without his consent. This action was being disputed by the defendants' motion, and is evidenced by docket entry #6, March 16, 2005, as the real cause of the delay.

September 1, Page Two

It should be noted that the outcome of the action responsible for the objectionable delay refutes the necessity of those actions being granted, affirming the contentions being raised by the defendants motion, which was denied at the June 3rd evidentiary hearing, further justifying an appeal of that decision to deny. The appeal was denied only because of a clerical error which remained uncorrected at the time of the decision, which denied the petitioner proper notice to show cause. Of course, an interlocutory order is not available to the plaintiff in a criminal complaint, who lacks the privelage, but in any case an appeal of a decision which denies a motion that effectively refutes a request for a delay of trial, cannot be responsible for that delay of trial.

The fruitless decision to grant counsel's frivolous motion, despite the duly recorded objections of the defendant, endorses the wayward counsel's behaviours in acting against the defendant, and warrants a measure of scorn, required to correct the injustice. A positive outcome of counsel's order being granted still would not preclude the necessity of trial, justifying the delay.

The August 31st decision erroneously ommits a July 19th continuance which was granted for the State, so that State officials might vacation, irregardless of trial scheduling. This decision is unfairly prejudiced because of the defendants inability to vacation, and furthermore the State's appearant decision to "vacate" was not considered.

September 1, Page Three

3.) In scheduling the two previous continuances, the Court <u>gains</u> extra opportunity, at the expense of the defendant, to adjudicate other cases, thereby giving my case seniority. Supreme Court Administrative directive 130 mandates 98% of all criminal cases be disposed of within 180 days of indictment; which means that only 2% of cases remain. Rescheduling at that time unfairly placed <u>State v. Safford</u> back in the ranks of cases not yet heard, when it should have been given priority to comply with the Supreme Court mandate and the defendants right to a speedy trial.

The Court is to make every effort to comply with Constitutional Law, but current scheduling places <u>State v. Safford</u> among the most difficult cases, despite a simple and over-arching question of conspiracy. Similarly, this Courts admission to an "Inability to try this case" is a denial of due process <u>requiring</u> dismissal. The defendant is not responsible for the Court's burdens.

You are incorrect on all counts, and as such your decision to deny is in error; is prejudicial because trial is a right of the accused and the defendant is innocent until proven guilty. I hope that under this light you will correct the order to support those Constitutional commands.

In the Interests of Justice,

David C. Safford II,
#252614

Copy: record

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE, | : |
| | : ID NO: 041001400 |
| | : |
| v. | : |
| | : |
| DAVID SAFFORD, | : |
| | : |
| Defendant. | : |

## ORDER

NOW this __31st__ day of August, 2005, upon Motion of Defendant to Dismiss, evidentially for the failure to commence trial quickly, the Court finds that Defendant was indicted on December 6, 2004, for events which allegedly took place on or about October 15, 2004, and for which Defendant was arrested on October 17, 2004. After a Motion by Defendant regarding counsel, before determination of which a trial could not take place, which Motion was denied by this Court, Defendant filed an interlocutory appeal with the Delaware Supreme Court. That effort at an appeal was denied by the Supreme Court on July 19, 2005. Until that time, a trial could not have occurred.

Now, trial has been set for September 20, 2005. Subject to this Court's inability to try the case because of the quantity of criminal cases to be dealt with at the same time, or because of some other unavoidable problem, Defendant's case will be tried as presently scheduled.

In any event, Defendant's present Motion to Dismiss is not well taken, and the same is DENIED.

SO ORDERED.

_____
JUDGE